

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

---

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

September 10, 2013

**BY EMAIL (ForrestNYSDChambers@nysd.uscourts.gov)**

The Honorable Katherine B. Forrest
United States District Judge
Southern District of New York
Daniel Patrick Moynihan U.S. Courthouse
500 Pearl Street, Room 730
New York, NY 10007

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED SEP 1 1 2013

      Re:   **In re 650 Fifth Avenue and Related Properties,**
              **08 Civ. 10934 (KBF)**

Dear Judge Forrest:

      The Government respectfully writes in response to the Court's order this morning, which suggests that the Government will not be able to question certain witnesses ███████████████████████████████████████████████████████████, and specifically projects a possible limit of "in the neighborhood of five questions per witness." September 10, 2013 Order, Docket No. 830. The Government respectfully urges the Court to reconsider this limit, imposed days before trial, which would effectively cripple the Government's presentation.

      The Government does not intend to ask each of the witnesses ██████████████████████████████████████████ and the Government will happily provide the Court with the roadmap ordered as to the questioning of each such witness. However, a cap of a mere five questions – amounting to under five minutes of testimony per each witness, given their presumed responses – would be deeply prejudicial to the Government's ability to present its case. The breadth of basic, vital topics in the case for which the witnesses' testimony – or refusal to testify – is important, even presented in the most efficient manner possible, significantly exceeds what five questions can accomplish. The Government respectfully requests, in the alternative, a maximum of a half hour's worth of "Fifth Amendment" questioning for each witness, with that amount of time to only decrease if questions sufficient to fill the allotted period have not been approved by the Court. Such a questioning period is vastly less than has been projected for all but a few witnesses in this case – even relatively benign witnesses – and thus minimizes potential prejudice to Alavi,

but nevertheless avoids imposing a debilitating limit on the Government's ability to address necessary topics with these witnesses.

## Background

As the Court is aware, the leading case on this subject in the Second Circuit is *LiButti v. United States*, 107 F.3d 110 (2d Cir. 1997). The *LiButti* Court noted the Supreme Court's instruction that while the Fifth Amendment precludes drawing adverse inferences against defendant's in criminal cases, it "does not forbid adverse inferences against parties to civil actions when they refuse to testify in response to probative evidence offered against them." *Id.* at 121 (quotation omitted). A non-party witness's invocation of the Fifth Amendment implicates Fifth Amendment concerns "to an even lesser degree." *Id. LiButti* also noted that a court maintains the ability to determine the suitability of how such privilege claims are to be presented on a case-by-case basis. *Id.*

Citing the other significant Second Circuit case on the subject, *Brinks v. City of New York*, 717 F.2d 700 (2d Cir. 1983), the *LiButti* court also observed a number of non-exclusive factors which should guide the trial court in making such admissibility determinations, including, but not limited to, the nature of the relevant relationships, the degree of control of the party over the witness, the compatibility of the interests of the party and the witness in the outcome, and the role of the non-party witness in the litigation. *LiButti*, 107 F.3d at 123. The overarching concern is "fundamentally whether the adverse inference is trustworthy under all of the circumstances and will advance the search for truth." *Id.* at 123.
Finally, as the *LiButti* court noted, once the admissibility determination is made, a Rule 403 analysis applies to the weight of the refusals to testify and their probative value. *See id.* at 124. In *LiButti*, the Court of Appeals found that these factors easily militated in favor of the admissibility of the invocations, but remanded so as to allow the trial court to carry out its Rule 403 analysis.

## Discussion

Here, the relationship between ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Each of the witnesses the Government intends to call either served on the board of the Alavi Foundation, generally as significant decision-makers, or served as the Foundation's accountant for several years during which IEEPA violations took place as alleged in the Amended Complaint. Each of the Board Member witnesses either was a member of the board for virtually all of this litigation until June 2013, or remains involved with the Foundation.

Further, as the Court found, to the extent that Claimants will contend that the Claimants' refusals to testify is based on their fear of the Government as opposed to being simply based on their complicity in illegal acts, the Claimants cannot simply rest on that assertion. The jury has a right to observe the witnesses' demeanor as they answer questions and assess that counterintuitive claim themselves.

2

The Court's proposed limit therefore appears to be grounded in the Rule 403 analysis that follows the threshold determination on admissibility. But a five-question limit severely undercounts the range of highly relevant topics for which the witnesses' testimony would be of probative value and their refusal to answer relevant questions would be compelling and reliably damning. Put simply, there are no other live witnesses within the Alavi Foundation during the operative time from 1995 to the present to provide testimony as to how Alavi conducted itself during that period. The Alavi Foundation witnesses the Government expects to actually testify substantively were not Board Members from 1992 onward. And the sheer number of ways in which Alavi violated the law after its inception using the Defendant Properties defies such a low limitation on questions. Further, the invoking witnesses' relationships to the Board during the relevant period of time are all of sufficient strength to assure a reliable inference results from their failure to testify.

The Government does not enthusiastically preview its approach to these witnesses, as it confers an advantage on the Claimants, but such disclosure is necessary to prevent a ruling that may result in severe prejudice. We therefore offer ▄▄▄▄▄▄▄▄▄ as an example. ▄▄▄▄▄ is critically relevant to the following topics at a minimum, all of which literally cannot begin be covered in a mere five questions:



3

- ███████████████████████████████

The Government cannot come close to covering these topics, each directly relevant to the central claims at the heart of the litigation, within five questions. Such a limitation would therefore unduly reward the Alavi Foundation for its witnesses' refusal to testify, as it would effectively wall off entire relevant areas of inquiry for which there simply is no substitute witness. Alavi would then be able to argue the impact of the Government's failure to address these areas to the jury. The Government can, however, endeavor to reduce the number of questions covered ███████████████ – ███████████████ -- to a half-hour's worth of questions. Even this will require considerable streamlining given the sheer breadth of distinct but highly relevant topics above, and it will limit the scope of questioning in a fashion unmatched as to any other witness in the trial. But the Government recognizes the concern the Court is attempting to balance in crafting a way for the testimony to come in, and is willing to both (1) submit its questions to pre-examination scrutiny by the Court so as to guard against lawyer abuse of the privilege and (2) limit its questioning to what it can accomplish in a half-hour, assuming that the invoking witnesses do not abuse that limit by "running out the clock" and taking excessive time between invocations of the Fifth Amendment.

Further, ███████████████████████████ ███████████████████████████ The Government had envisioned needing to call only five of them at trial. With hard limits imposed on the number of questions that lack a basis in the subject matter related to each witness, the Government would likely have to call all seven witnesses. And with the Court's limit having been newly proposed, the Government would likely have to significantly alter the questions asked from ██████ ███████████████ leading to additional uncertainty and potential complications involving any actual invocations. Further, the great likelihood is that the Judgment Creditor witnesses would need to ask more questions as to each witness during the limited non-jury time we have, whereas otherwise they may not need to question the witnesses at all.

The Government respectfully submits that both the equities and the efficiencies militate heavily against a limit of five questions per Fifth Amendment witness. We ask that the Court make its determinations not based on a pre-determined limit, but on the merits of the questions proposed. The Government's proposal, under which *all five* envisioned Fifth Amendment witnesses would be questioned directly in less than an afternoon in total, would minimize prejudice to Alavi by keeping the spectacle of the so-called "parade" of invoking witnesses to a total of two and one-half hours combined, while avoiding the severe prejudice that would result from a meager five-question-per-witness allotment.

     Accordingly, we urge the Court to reconsider the order of magnitude of its proposed limit, and adopt a half-hour per witness limit instead.

                                              Respectfully submitted,

                                              PREET BHARARA
                                              United States Attorney for the
                                              Southern District of New York

By:     /s/ Martin S. Bell
           Sharon Cohen Levin
           Michael D. Lockard
           Martin S. Bell
           Carolina A. Fornos
           Assistant United States Attorneys
           Anand Sithian
           Special Assistant United States Attorney
           (212) 637-1060/2193/2463/2740/1085

cc:     Counsel of record (by email)

---

**Order**

The issue is balancing (1) ability for jury to see the witness' demeanor, (2) hearing the witness be questioned and invoke the 5th, and (3) not having the jury confuse the <u>questions</u> for testimony or evidence. The Court will not adopt a half-hour limit (because I could/anyone could read the dep. questions aloud is their entirety in a half hour without pauses) -- but the court will take a proffer consistent with the above guidance at trial. The Government is instructed not to assume it will have the opportunity to ask numerous individual questions.

K. Buster 9/11/13